UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| ELIJAH DRAYTON,<br><br>                              Plaintiff,<br><br>vs.<br><br>MG OIL COMPANY, doing business as Flying J Travel Center; PAM N/A; RANDY WILSON; SHERRY KAHLER; MARIAH MARKS; DARLENE POPE, LYNETTE BECKER a/k/a Betty Love; PAULA CARVER; and DEE N/A,<br><br>                              Defendants. | 5:26-CV-05039-RAL<br><br>OPINION AND ORDER DISMISSING CASE WITHOUT PREJUDICE FOR LACK OF SUBJECT-MATTER JURISDICTION |

Plaintiff Elijah Drayton filed a pro se lawsuit alleging employment discrimination.[1] Doc. 1. Drayton also filed a motion for leave to proceed in forma pauperis, Doc. 2, and a motion for appointment of counsel, Doc. 3.

I.      **Facts Alleged in the Complaint[2]**

Drayton, who is African American, began working in a managerial capacity at Flying J Travel Center in November 2023. Doc. 1 at 6, 7. Drayton was fired based on claims of inappropriate behavior when writing up an employee and "prolonged drama at [his] location." Id. at 6. The "[p]rolonged drama," according to Drayton's complaint, includes "slander and defamation of [his] character[,] . . . employees doing drugs in the bathroom, buying drugs on the

---

[1] Drayton's complaint alleges discrimination based on disability, race, and retaliation. Doc. 1 at 1, 7.

[2] The attachment Drayton submitted as the "Statement of claim" begins mid-sentence, which leads the Court to question whether there is another page that may have been omitted. Doc. 1 at 3, 6.

clock, drinking on the clock, being late, and sexual harassment[.]" Id. Drayton wrote up employees for slander and defamation of character to prevent further drama. Id. at 6, 7. As the Court understands Drayton's complaint, the inappropriate behavior when writing up an employee stems from his write up of Sherry Kahler, whom he was told to fire, and Mariah Marks, whom he was told not to fire, although Kahler and Marks were written up for the same action. Id. at 6. Human resources informed Drayton that he could not write the employees up on company letterhead. Id. at 7. Drayton rewrote the write ups and was then terminated without warning. Id. A Caucasian manager was written up twice for drama at her location, but this manager was not fired. Id. at 6, 7. Thus, Drayton alleges that he was discriminated against based on his race. Id.

Drayton contends that he was also terminated for not working the shifts or hours required. Id. at 6. A Caucasian manager missed several days of work without calling in and then quit. Id. This manager was rehired and informed that if she had communicated her need for time off, she could have been offered FMLA leave. Id. Liberally construing Drayton's complaint, he missed time from work because he was "dealing with health issues and seeking medical care[]" at the time he wrote up two employees. Id. at 6, 7. Although Drayton kept Randy Wilson, whom the Court assumes was one of Drayton's supervisors, advised of his medical appointments and "well-being[,]" Drayton was not offered FMLA leave or any reasonable accommodations. Id. Drayton also contends that he was terminated because the lottery numbers at this location were low, but Drayton alleges that his location was not the only one with low lottery numbers. Id. at 6. According to Drayton, he was "a target of pop-up audit visits by Lynette Becker," but managers at other locations were not subjected to such audit visits. Id.

The Caucasian manager and Kahler, an employee Drayton wrote up, have spread "lies and rumors" that Drayton steals money, sells drugs, and is a "predator" toward women. Id.

2

Drayton's retaliation claim appears to stem from his allegation that he was fired for bringing certain matters to his employer's attention. Id. Drayton also contends that he dealt with discrimination at another location, which he reported to his boss. Id. His boss, in turn, reported the discrimination to Pam and Becker. Id. Weeks later, Drayton told his boss that he was contacting the EEOC. Id. His employer then told managers to delete emails and text messages, and a human relations employee has allegedly deleted all email communications to and from Drayton. Id. When two of Drayton's witnesses go to the location where Drayton was employed, the witnesses are intimated and harassed. Id. Drayton seeks compensatory damages of $17,000 for emotional distress before and after his employment. Id. at 4.

Drayton attached an EEOC charge of discrimination to his complaint. Id. at 7–8. The charge of discrimination was notarized on March 30, 2026, id. at 8, and Drayton commenced this action a few days later on April 9, 2026, id. The record does not reflect that Drayton has received a right-to-sue letter.

## II.    Jurisdictional Analysis

Because federal courts are courts of limited jurisdiction, see Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994), this Court must consider whether Drayton's complaint involves a case or controversy within its jurisdiction. See Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

District courts have jurisdiction to hear "civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "Title VII makes it unlawful for an employer 'to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" Muldrow v. City of St.

Louis, 601 U.S. 346, 354 (2024) (citing 42 U.S.C. § 2000e-2(a)(1)).  Title VII also "prevents employers form retaliating against employees who have acted to vindicate their statutorily protected rights by reporting harassment or discrimination in the workplace."  Warren v. Kemp, 79 F.4th 967, 972 (8th Cir. 2023) (quoting Brannum v. Mo. Dep't of Corrs., 528 F.3d 542, 547 (8th Cir. 2008); see also 42 U.S.C. § 2000e-3(a).  The Americans with Disabilities Act (ADA) prohibits a covered employer from discriminating against any qualified individual on the basis of a disability.  42 U.S.C. § 12112(a).  The ADA's prohibition of disability discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual who is an applicant or employee."  Kelleher v. Wal-Mart Stores, Inc., 817 F.3d 624, 631 (8th Cir. 2016).

A plaintiff may not pursue a Title VII claim unless the plaintiff has first exhausted his administrative remedies and received a right-to-sue letter from the EEOC.  Shannon v. Ford Motor Co., 72 F.3d 678, 684 (8th Cir. 1996); see also 42 U.S.C. § 2000e-5(b), (c), (e).  If the record does not demonstrate that the plaintiff has received a right-to-sue letter, Title VII claims are subject to dismissal.  Allen v. Shaffer, No. 4:20-CV-00150-BCW, 2020 WL 12675252, at *3 (W.D. Mo. Sep. 18, 2020) (citing Jones v. Am. State Bank, 857 F.2d 494, 499 (8th Cir. 1988)).  Likewise, claims under the ADA must also be exhausted by filing a charge with the EEOC and receiving notice of the right to sue.  Moses v. Dassault Falcon Jet-Wilmington Corp., 894 F.3d 911, 919–20 (8th Cir. 2018); see also  42 U.S.C. § 12117(a) (providing that 42 U.S.C. § 2000e-5 applies to the ADA); Randolph v. Rodgers, 253 F.3d 342, 347 n.8 (8th Cir. 2001) ("Title VII of the Civil Rights Act of 1964 and Title 1 of the ADA both require exhaustion of administrative remedies[.]").

4

Here, because the record does not demonstrate that Drayton has received a right-to-sue letter, at this time, he cannot pursue his Title VII and ADA claims in federal court. Thus, this Court does not have subject-matter jurisdiction under 28 U.S.C. § 1331.[3]

Drayton's complaint alleges a state law claim for defamation and slander. Doc. 1 at 3, 6. Under South Dakota law, "[e]very person is obligated to refrain from infringing upon the right of others not to be defamed." SDCL § 20-11-1. Defamation includes libel or slander, as defined by statute. Id. §§ 20-11-2 to -4. Because federal question jurisdiction under 28 U.S.C. § 1331 is inapplicable and Drayton alleges a state law claim, the Court must determine whether diversity jurisdiction exists. Diversity jurisdiction exists when the parties are completely diverse, and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). "Complete diversity of citizenship exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship." OnePoint Sols., LLC v. Borchert, 486 F.3d 342, 346 (8th Cir. 2007) (citation omitted). Drayton, the party seeking a federal forum, bears the burden of demonstrating that the parties are citizens of different states. Sheehan v. Gustafson, 967 F.2d 1214, 1215 (8th Cir. 1992). According to Drayton's complaint, he is a citizen of the State of Kansas. Doc. 1 at 2. Drayton's complaint

---

[3] An employee who alleges that an employer has denied or interfered with his substantive rights under the Family and Medical Leave Act (FMLA) is not required to exhaust administrative remedies before filing a lawsuit. Sanvee v. Hennepin Cnty. Hum. Servs., No. 10-527 (RHK/JSM), 2012 WL 4128388, at *16 (D. Minn. Aug. 13, 2012) (collecting cases), report and recommendation adopted by 2012 WL 4120507 (D. Minn. Sept. 19, 2012), aff'd, 598 F. App'x 475 (8th Cir. 2015) (per curiam). Drayton's complaint, as the Court understands it, does not allege an interference claim under the FMLA. Doc. 1 at 1. Rather, Drayton alleges that he was not offered FMLA leave when similarly situated employees who are not African Americans were offered FMLA leave in support of his claim for racial discrimination in violation of Title VII. Id. at 6, 7.

alleges that all defendants are citizens of the State of South Dakota. Id. Thus, there appears to be complete diversity of citizenship.[4]

But even if there is complete diversity of citizenship, this Court does not have subject-matter jurisdiction under 28 U.S.C. § 1332(a) unless the amount in controversy exceeds $75,000. According to his complaint, Drayton seeks $17,000 in damages for emotional distress before and after employment. Doc. 1 at 4. "A plaintiff who sues for damages less than the threshold for diversity jurisdiction can be bound to that limit[.]" Toller v. Sagamore Ins. Co., 514 F. Supp. 2d 1111, 1119 (E.D. Ark. 2007). Drayton bears the burden of establishing that the amount in controversy exceeds the jurisdictional minimum, and the allegations in his complaint are insufficient to meet this burden. See Bell v. Hershey Co., 557 F.3d 953, 956 (8th Cir. 2009) ("The proponent of diversity jurisdiction has the burden of proving that the amount in controversy exceeds the jurisdictional minimum." (citation omitted)). Having determined that federal question jurisdiction is lacking and that Drayton has not alleged that the amount in controversy exceeds the jurisdictional minimum, Federal Rule of Civil Procedure 12(h)(3) mandates that this Court dismiss Drayton's complaint due to lack of subject-matter jurisdiction.[5] See Sanders v. Clemco Indus.,

--------

[4] Drayton alleges that MG Oil Company d/b/a Flying J is a business located at 1180 Creek Drive in Rapid City, South Dakota. Doc. 1 at 2. Drayton's complaint does not allege where MG Oil Company is incorporated or specify whether the address provided in his complaint is its principal place of business. See generally id. As discussed infra because Drayton does not sufficiently allege that the amount in controversy exceeds the jurisdictional minimum, it is not necessary to consider whether these omissions in Drayton's complaint mean that there is not complete diversity. See Sanders v. Clemco Indus., 823 F.2d 214, 216 (8th Cir. 1987) (recognizing that when the complaint does not state the place of incorporation and the principal place of business of a corporate party, the pleading is inadequate to establish diversity jurisdiction).

[5] Because a dismissal for lack of subject-matter jurisdiction is without prejudice, Drayton will not be precluded, if he so chooses, from refiling this action if he receives a right-to-see letter from the EEOC. If Drayton receives a right-to-sue letter and asserts claims over which this Court has federal question jurisdiction, he may also include any state-law claims over which the Court may

6

823 F.2d 214, 216 (8th Cir. 1987) (stating that district courts should "be attentive to a satisfaction

of jurisdictional requirements in all cases." (citation omitted)).

III.    **Conclusion**

For the reasons discussed above, it is

ORDERED that Drayton's complaint, Doc. 1, is dismissed without prejudice for lack of

subject-matter jurisdiction. It is further

ORDERED that Drayton's motion for leave to proceed in forma pauperis, Doc. 2, and

motion for appointment of counsel, Doc. 3, are denied as moot.

DATED June 23, 2026.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE

___

have supplemental jurisdiction under 28 U.S.C. § 1367. Alternatively, Drayton may bring his
state-law claims in state court in Pennington County, South Dakota.

7